UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JESSE KIRBY,

      *Plaintiff,*

v.

RANDALL PETIT, KATE WISEMAN, and
AVIVAH DELABRUERE,

      *Defendants.*

No. 24-cv-12015-AK

Related Case: No. 25-cv-10335-AK

AVIVAH DELABRUERE,

      *Plaintiff,*

v.

JESSE KIRBY and J. MICHAEL DOYLE,

      *Defendants.*

**<u>REPORT AND RECOMMENDATION ON MOTIONS
TO DISMISS</u>**

LEVENSON, U.S.M.J.

      This case stems from a falling out among friends. As the claims and counterclaims in this case reflect, Plaintiff Jesse Kirby is at odds with Defendants Kate Wiseman, Randall Petit, and Avivah Delabruere. How things reached this point depends on who you ask.

In Kirby's telling, the friendship began to deteriorate when Wiseman, Petit, and Delabruere (collectively, "Defendants") conspired to—and did—falsely accuse him of sexual assault, demand $300,000 from him, and threaten to destroy him, his family, and his business. This conduct, according to Kirby, led him to sue Defendants for conspiracy, extortion, and defamation (among other claims).

Defendants, by contrast, contend that there were no threats and no extortion, and that Kirby's motive for initiating the present suit was to extort, harass, and punish *them*. Defendants bring counterclaims against Kirby for, among other things, abuse of process, assault, and battery.

With the case at the pleading stage, the Court is in no position to decide contested issues of fact. Rather, at the present juncture, the parties dueling motions to dismiss require the Court to sort out threshold issues: (1) whether Kirby's claims against Wiseman and Petit are subject to dismissal under the Massachusetts anti-SLAPP[1] statute; (2) whether some of Wiseman and Petit's counterclaims are subject to dismissal under the Massachusetts anti-SLAPP statute; and (3) whether other of Wiseman and Petit's counterclaims are barred by the statute of limitations and thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, I recommend that Judge Kelley deny Wiseman and Petit's motion to dismiss (Docket No. 50) in its entirety, as Kirby's claims are not subject to dismissal under the anti-SLAPP statute. I also recommend that Judge Kelley grant Kirby's motions to dismiss (Docket Nos. 37, 39) insofar as they request dismissal of Counterclaims 6 through 11 under the anti-SLAPP statute, and insofar as they request dismissal of any counterclaims that are

---

[1] SLAPP stands for Strategic Litigation Against Public Participation.

predicated on assaults that allegedly occurred prior to July 31, 2021 (*i.e.*, three years before the inception of this case).[2]

## I.    Background

### A.    Facts

As described in the parties' pleadings, this case involves several former members of a religious cult[3] known as Twelve Tribes. Unsurprisingly, most of the facts alleged in this case are disputed. But the parties are aligned in their characterization of Twelve Tribes as an abusive cult. *See* Docket No. 31, at 10 (Wiseman and Petit's description of Twelve Tribes as an "abusive environment" where "sexual abuse was tolerated and rape of children was common"); Docket No. 59, ¶ 15 (Kirby's description of Twelve Tribes as an "abusive, restrictive, and oppressive religious cult"); Docket No. 92, ¶¶ 10, 15 (Delabruere's description of Twelve Tribes as an "isolated religious environment" where "children were conditioned from a young age to submit to sexual touching by male elders in the group").

In approximately 2007, Kirby escaped from Twelve Tribes.[4] Docket No. 31, at 10; Docket No. 59, ¶ 16. Wiseman followed suit approximately two years later. Docket No. 31, at 10.

The parties appear to agree that those who successfully escaped Twelve Tribes—including Kirby and Wiseman—became part of a "tightknit community of . . . survivors." Docket No. 59, ¶ 13; *see id.* ¶¶ 17–19. They were joined by Delabruere, whose family escaped Twelve Tribes

---

[2] Under Massachusetts law, the statute of limitations with respect to counterclaims is calculated from the date the plaintiff's action was commenced. *See* Mass. Gen. Laws ch. 260, § 36.

[3] The characterization of "Twelve Tribes" as a religious cult is based upon the parties' pleadings. My use of that characterization does not reflect any independent finding on the point.

[4] Kirby does not indicate when he escaped Twelve Tribes, but according to Wiseman and Petit's answer, he escaped in approximately 2007. *See* Docket No. 31, at 10.

when she was 13, and Petit, Wiseman's then-fiancé (now-husband). *See* Docket No. 59, ¶¶ 25–26; Docket No. 92, at 2.

As part of this group of survivors, Kirby and Defendants frequently attended "social events" and went on "expensive trips" together, which were paid for by Kirby. Docket No. 59, ¶ 21; *see id.* ¶ 20 (describing Kirby's "very successful business," which allowed him to become "very wealthy" and "a substantial member of the community").

There is no dispute that, at some point in or around 2023, the close friendship between Kirby, Wiseman, Petit, and Delabruere deteriorated. Each party, however, has a different explanation of what caused the falling out.

According to Wiseman, the fault belongs to Kirby, who had been drugging and sexually assaulting her for years. *See* Docket No. 31, at 10 ("On multiple occasions between 2013 and 2021, Kirby gave [Wiseman] GHB, commonly known as a 'date rape drug,' causing her to black out to the extent that she was so mentally incapacitated she could not consent to sexual intercourse; on more than one occasion Kirby sexually assaulted [Wiseman] while she was incapacitated.").[5]

Kirby's version is very different. In his version, Kirby and Wiseman had a "consensual affair" in the years following their escape from Twelve Tribes. Docket No. 59, ¶ 26. The group remained friends until approximately June 2023, when Defendants "ceased contact" and declined to attend a social gathering at Kirby's home, making him "concerned there was a problem." *Id.* ¶ 29. Kirby's suspicions were confirmed when, on June 30, 2023, Wiseman called him while "in

---

[5] Delabruere has her own version of events. *See generally* Docket No. 92. Because no party has moved to dismiss Delabruere's counterclaims against Kirby (nor Delabruere's claims against J. Michael Doyle), I do not discuss those counterclaims.

the presence" of Petit and Delabruere.[6] *Id.* ¶ 30. Wiseman told Kirby that Petit had "learned of the

affair" and, in an effort to "extricate herself from culpability," she "[f]alsely accused . . . Kirby of

manipulating her and using drugs to have sex with her." *Id.* Wiseman threatened that if Kirby

"spoke their names, they would destroy him, his family, and his business." *Id.* (emphasis omitted).

Ten minutes after the call, Kirby received a text from Petit that, in Kirby's telling, "reiterat[ed] the

threat" Wiseman had issued over the phone. *Id.* ¶ 32. *See generally* Docket No. 59-2 (attaching the

allegedly extortionate text message).[7] Fearing that Defendants would "embark on a campaign of

lies and falsehoods to destroy his life, his family, and his business," Kirby "acceded to their

extortionate demands, and separated himself from all the Defendants, . . . and did not speak their

names for a year." Docket No. 59, ¶ 33.

Kirby further contends that the alleged extortion escalated in the following year: in or

around June 2024, he received multiple texts from Delabruere stating that it would be in his best

interest to speak with her. *Id.* ¶ 37. On June 4, 2024, Delabruere telephoned Kirby, demanding a

payment of $300,000 by July 1, 2024, and stating that if Kirby refused to pay her, she would

destroy his life and his reputation. *Id.* ¶¶ 40–41. According to Kirby, Wiseman and Petit were with

Delabruere when she made the call. *Id.* ¶ 40. On June 7, 2024, and then again on June 14, 2024,

Delabruere texted Kirby to follow up on the July 1 deadline. *See id.* ¶¶ 42–43, 44. *See generally*

Docket No. 59-3 (June 7, 2024, text messages); Docket No. 59-4 (June 7, 2024, text messages);

---

[6] Kirby appears to base his belief that Delabruere was present during the June 30, 2023, call on his understanding that Delabruere had been living with Wiseman and Petit at the time. *See* Docket No. 59, ¶ 31.

[7] The text allegedly stated, in relevant part: "It's worth reiterating. We are well aware of the shit you talk and you are entitled to your opinion. However, I highly suggest you think twice if you ever decide you want to speak negatively about us in the future. It seems somewhat disrespectful to share things with people you wouldn't be comfortable sharing to me face to face. But that's my humble opinion. You clearly have yours." Docket No. 59-2, at 3.

Docket No. 59-5 (June 14, 2024, text messages). A private investigator (presumably retained by Kirby) spoke with Delabruere about her demand over the phone on June 18, 2024. Docket No. 59, ¶ 45. During the call, Delabruere "admitted to the extortion, pleaded with the investigator not to go to law enforcement, and claimed she would have no more contact with . . . Kirby." *Id.* ¶ 46.

Kirby contends that Wiseman sent him another email on July 19, 2024, in which she further "retaliated" against him. *Id.* ¶ 47. *See generally* Docket No. 59-6 (July 19, 2024, email).

### B.    *Procedural Posture*

On July 31, 2024, Kirby filed a complaint in Plymouth County Superior Court against Defendants. Docket No. 8, at 5–22. Delabruere removed the case to the U.S. District Court for the District of Massachusetts on August 5, 2024. Docket No. 1. Defendants subsequently answered the complaint and brought various counterclaims against Kirby. *See* Docket Nos. 19 (Delabruere's answer), 31 (Wiseman and Petit's answer).

On November 17, 2024, Kirby filed two motions seeking dismissal of Wiseman and Petit's counterclaims.[8] Docket Nos. 37 (motion to dismiss Wiseman's counterclaims), 39 (motion to dismiss Petit's counterclaims). Kirby argued in these motions that some counterclaims should be dismissed under the Massachusetts anti-SLAPP statute, and that other counterclaims should be dismissed for failure to state a claim. *See* Docket Nos. 38, 40. Wiseman and Petit opposed the motions (Docket No. 49), and Kirby replied (Docket No. 56).

On December 9, 2024, Wiseman and Petit filed their own motion to dismiss, seeking dismissal of Kirby's claims under the Massachusetts anti-SLAPP statute. Docket No. 50. Kirby opposed the motion (Docket No. 61), and Wiseman and Petit replied (Docket No. 62).

---

[8] Kirby has not moved to dismiss Delabruere's counterclaims.

On December 17, 2024, before briefing on the parties' motions to dismiss had been completed, Kirby filed an amended complaint.[9] *See* Docket No. 59. Wiseman and Petit answered the amended complaint on January 6, 2025. Docket No. 64. In their answer, Wiseman and Petit brought amended counterclaims, but, three days later, on January 9, 2025, they withdrew those amended counterclaims. Docket No. 65. As such, the counterclaims alleged in Wiseman and Petit's original answer (Docket No. 31) are Wiseman and Petit's only remaining counterclaims. Delabruere, it appears, never answered Kirby's amended complaint.

Judge Kelley referred the case to me for full pre-trial proceedings, including report and recommendation on dispositive motions, on January 24, 2025. Docket No. 71. I held a hearing on the three pending motions to dismiss on March 19, 2025, at which point I took the motions under advisement.[10] Docket No. 95.

## II.    Analysis

Courts must decide "anti-SLAPP motion[s] before deciding other grounds for dismissal." *de Lench v. Archie*, 406 F. Supp. 3d 154, 158 (D. Mass. 2019) (citing *Kobrin v. Gastfriend*, 443 Mass. 327, 341 (2005)). Accordingly, I will address the portions of Kirby's motions that seek dismissal of Wiseman and Petit's counterclaims under the anti-SLAPP statute, as well as Wiseman

---

[9] Kirby brought the same claims against Defendants in his amended complaint as he did in his original complaint, changing Wiseman's name from Kate Petit to Kate Wiseman. *See* Docket No. 57.

[10] During a status conference on March 12, 2025, I granted the parties' motion to consolidate the present case (No. 24-cv-12015-AK) with a case that had been transferred from the U.S. District Court for the District of Connecticut (No. 25-cv-10335-AK). Docket Nos. 87, 89. The case that originated in the District of Connecticut was filed by Delabruere against Kirby and J. Michael Doyle, an investigator allegedly hired by Kirby. *See* 25-cv-10335-AK, Docket No. 1. Following consolidation, I instructed Delabruere to file an amended pleading to ensure that her claims against Doyle were captured in the present case. *See* Docket No. 87. Delabruere filed the amended pleading on March 19, 2025, Docket No. 92, and Kirby answered on April 9, 2025, Docket No. 96.

and Petit's motion to dismiss Kirby's claims under the anti-SLAPP statute, before addressing Kirby's contention that certain of Wiseman and Petit's counterclaims are time-barred and thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

### A.    The Massachusetts Anti-SLAPP Statute

"General Laws c. 231, § 59H, more commonly known as the 'anti-SLAPP' statute, establishes a procedure for obtaining the early dismissal of a claim that seeks to impose liability on individuals for exercising their constitutional right of petition." *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 540 (2024). "The statute creates a procedural vehicle—known as the special motion to dismiss—intended to secure the early dismissal of a meritless SLAPP claim, along with attorney's fees, before significant discovery has occurred." *Id.* at 548.

Adjudicating special motions to dismiss under the anti-SLAPP statute entails a two-step burden-shifting framework. *Bryan v. Ascend Learning, LLC*, No. 24-cv-10583-ADB, 2024 WL 5170211, at *4 (D. Mass. Dec. 19, 2024).

At step one, the proponent of the special motion to dismiss "must 'make a threshold showing through the pleadings and affidavits that the claims against it are "based on" the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.'" *Bristol Asphalt*, 493 Mass. at 555 (alteration in original) (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 167–68 (1998)). "[T]o determine if statements are petitioning, [courts] consider them in the over-all context in which they were made." *Bryan*, 2024 WL 5170211, at *4 (alteration in original) (quoting *N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 452 Mass. 852, 862 (2009)). "While '[t]he typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects,' the statute provides for broader protection in certain situations." *Id.*

(alteration in original) (citation omitted) (quoting *Duracraft*, 427 Mass. at 161). "Typical categories of petitioning activities include 'reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, . . . filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.'" *Riverdale Mills Corp. v. Cavatorta N. Am., Inc.*, 189 F. Supp. 3d 317, 324 (D. Mass. 2016) (quoting *Cadle Co. v. Schlichtmann*, 448 Mass. 242, 248 (2007)).

"Where a special motion proponent has met this threshold burden," the anti-SLAPP statute—at step two—"requires allowance of the special motion to dismiss, 'unless the [special motion opponent] shows' that the special motion proponent's exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and . . . 'caused actual injury to the [special motion opponent].'" *Bristol Asphalt*, 493 Mass. at 557 (certain alterations in original) (quoting Mass. Gen. Laws ch. 231, § 59H). "[T]he Supreme Judicial Court has emphasized that proving that particular petitioning activity is '"devoid" of *any* reasonable factual support or *any* arguable basis in law is a difficult task.'" *Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148, 153 (2024) (quoting *Bristol Asphalt*, 493 Mass. at 557).

"[W]hen the special motion opponent has submitted evidence and argument challenging the reasonableness of the factual and legal basis of the petitioning, a special motion proponent cannot merely rely on speculation, conclusory assertions, or averments outside of its personal knowledge for the court to identify reasonable support." *Bristol Asphalt*, 493 Mass. at 558.

      *1.    Kirby's Motions to Dismiss*

Kirby moves to dismiss six of Wiseman and Petit's counterclaims—namely Counterclaims 6 through 11—under the anti-SLAPP statute. *See* Docket Nos. 38, 40. For the reasons set forth below, I find that Kirby has made a threshold showing that those counterclaims are based on his

petitioning activity alone, and that Wiseman and Petit have not met their burden to show that Kirby's exercise of his right to petition was devoid of reasonable factual support. Accordingly, I recommend that Judge Kelley dismiss Counterclaims 6 through 11.

> a.   Step One of the Anti-SLAPP Analysis: Based on Petitioning Activity Alone

Kirby contends that Counterclaims 6 through 11 are based solely on his petitioning activity, namely his "[c]onstitutional right to petition the [c]ourts for redress." Docket No. 38, at 6. In essence, he contends that Counterclaims 6 through 11 amount to Wiseman and Petit suing Kirby for Kirby's having sued them. *See id.* at 5–7.

As a matter of law, the filing of a lawsuit constitutes petitioning activity under the anti-SLAPP statute. *See 477 Harrison Ave., LLC v. JACE Bos., LLC*, 483 Mass. 514, 520 (2019) ("Commencement of litigation is quintessential petitioning activity."); *Rosario v. Caring Bees Healthcare, Inc.*, No. 21-P-728, 2023 WL 2777578, at *3 (Mass. App. Ct. Apr. 5, 2023) ("Petitioning may also take the form of filing a lawsuit or taking other court action."). Indeed, the anti-SLAPP statute expressly defines petitioning activity to include "any written or oral statement made before or submitted to a . . . judicial body." Mass. Gen. Laws ch. 231, § 59H.

The critical question, therefore, is whether Counterclaims 6 through 11 are based *solely* on Kirby's filing of the present lawsuit. Although there is considerable overlap among these counterclaims, they present a few different issues, which I will consider separately.

i.      Counterclaims 6, 8, and 9

Counterclaims 6, 8, 9 are—essentially—abuse of process claims.[11] Wiseman and Petit contend in these counterclaims that Kirby's lawsuit is frivolous, that it is not advanced in good faith, and that it was brought to extort Wiseman and Petit, as well as to coerce Wiseman to recant statements she had previously made about Kirby.[12] *See* Docket No. 31, at 13 (Counterclaim 6) (alleging that Kirby's claims are "wholly insubstantial, frivolous and . . . not advanced in good faith," as they were brought to "extort money" or "to improperly coerce [Wiseman] to recant her truthful testimony"); *id.* at 14 (Counterclaim 8) (alleging that "Kirby falsely, maliciously and without probable cause brought suit against" Wiseman and Petit to "extort," "harass[]," and "punish" them); *id.* at 14–15 (Counterclaim 9) (alleging that "Kirby falsely, maliciously, and without probable cause brought suit" to "harass[]," "punish," and "extort," as well as to force Wiseman to "recant her truthful testimony").

An abuse of process claim is—by definition—"based on . . . protected petitioning activity; *i.e.*, the commencement of [an] action." *McLaughlin v. Rubenstein*, SUCV20163811BLS1, 2017 WL 5985470, at *3 (Mass. Super. Ct. Oct. 12, 2017); *see 477 Harrison Ave., LLC v. JACE Bos., LLC*, 477 Mass. 162, 169 (2017) ("Given that the invocation of process necessarily constitutes petitioning activity for the purposes of the anti-SLAPP statute, an actionable abuse of process claim will always be, at least in part, based on a special movant's petitioning activities." (citation

---

[11] Under Massachusetts law, the elements of an abuse of process claim are that (1) "process" was used, (2) for ulterior or illegitimate purposes, (3) resulting in damage. *Millenium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010).

[12] Wiseman repeatedly recites that Kirby brought suit to pressure her to "recant" testimony in which she accused him of rape. *See, e.g.*, Docket No. 31, at 13. Delabruere makes a similar claim as well. *See, e.g.*, Docket No. 92, at 18–19. However, no party has provided any specifics regarding Wiseman and Delabruere's supposed testimony.

omitted)); *Hidalgo*, 105 Mass. App. Ct. at 150–51 (noting that claims for abuse of process are "prima facie subject to dismissal under the anti-SLAPP statute"). But "this does not mean that an abuse of process claim will always be *solely* based on a special movant's petitioning activities." *477 Harrison Ave.*, 477 Mass. at 169.

The critical question at this stage is whether a claim is based on the filing of the lawsuit *alone*. Courts that have considered this question have found that an abuse of process claim is not based solely on petitioning activity if there is "a showing of 'conduct separate and independent from the petitioning activity.'" *See Gerard v. Mayer*, No. MICV201200558, 2012 WL 6195208, at *6 (Mass. Super. Ct. Oct. 24, 2012) (quoting *Keystone Freight Corp. v. Bartlett Consol. Corp.*, 77 Mass. App. Ct. 304, 314 (2010)). "To hold that evidence of improper action, separate and distinct from the exercise of petitioning activity, is necessary as a threshold requirement simply means that attribution of a motive, alone, is never sufficient." *Id.* (quoting *Keystone Freight*, 77 Mass. App. Ct. at 314); *see Hidalgo*, 105 Mass. App. Ct. at 151 (rejecting counterclaimant's attempt to avoid anti-SLAPP dismissal of counterclaims, where counterclaimant contended that its allegation that Plaintiff's claims had been brought "in bad faith, or for an ulterior purpose not related to prosecuting the lawsuit itself" sufficed to show that the counterclaims were "not based 'solely' upon petitioning activity"). In other words, "allegations of an ulterior motive unsupported by conduct independent of the petitioning activity" will not suffice, by themselves, to remove a claim from the reach of the anti-SLAPP statue. *Keystone Freight*, 77 Mass. App. Ct. at 314; *see Humphrey v. Comoletti*, No. 15-cv-14170-ADB, 2017 WL 1224539, at *5 (D. Mass. Mar. 31, 2017) ("[W]hen there are factual allegations and evidence that, *independent of the process itself*, support a finding that the defendant did in fact have an ulterior motive in initiating the process, a special motion to dismiss should be denied under the first prong." (emphasis added)).

The upshot is that an abuse of process claim may be viable, and not subject to dismissal under the anti-SLAPP statute, when use of process (*i.e.*, the litigation) is part of a larger extortion attempt. *See 477 Harrison Ave.*, 477 Mass. at 169 ("[A] party's attempt to use an invocation of process to extort an opposing party constitutes a substantial nonpetitioning basis for an abuse of process claim."); *Fabre v. Walton*, 436 Mass. 517, 524 n.10 (2002) (suggesting that an abuse of process claim may survive an anti-SLAPP dismissal motion when there are allegations that process was used to "coerce or obtain a collateral advantage or for some other illegitimate purpose"). Applying this logic, Massachusetts courts have declined to dismiss abuse of process claims under the anti-SLAPP statute when those claims were alleged to be part of a broader extortion scheme. *See, e.g.*, *Humphrey*, 2017 WL 1224539, at *5 (denying anti-SLAPP motion where there was support for the contention that the defendant's "motive was to intimidate and coerce"); *Keystone Freight*, 77 Mass. App. Ct. at 315 (affirming the lower court's denial of the anti-SLAPP motion where a party's conduct—separate and apart from its petitioning activity—was "arguably consistent with an attempt . . . to coerce payment"); *McLaughlin*, 2017 WL 5985470, at *3 (denying anti-SLAPP motion where the plaintiff's "entire course of conduct"—beyond the mere filing of the complaint—demonstrated an attempt to "create unfair leverage in [his] favor"); *Fader v. Great Harbor Yacht Club, Inc.*, No. NACV201400006, 2014 WL 4953609, at *5 (Mass. Super. Ct. Aug. 14, 2014) (denying anti-SLAPP motion where the defendant "engaged in other conduct evidencing an ulterior motive").

Critically, to avoid dismissal under the anti-SLAPP statute by invoking extortion, a litigant must offer something more than conclusory allegations regarding the opposing party's motive for filing suit. *See Hidalgo*, 105 Mass. App. Ct. at 151 ("[T]he subjective motivation for filing a lawsuit is not separable, or separately actionable, from the act of filing suit."). Typically, this

means pointing to evidence of conduct outside of, or beyond, the mere filing of the lawsuit. *See Duhamel v. Cardiology Consultants of Cent. Mass., LLP*, No. 06-P-450, 2007 WL 1574581, at *1 (Mass. App. Ct. May 31, 2007) (finding the defendant's "effort to characterize the petitioning activity as extortion . . . unavailing" where the defendant did not "assert any basis for its abuse of process claim apart from [the plaintiff's] petitioning activities at Superior Court and the MCAD"); *Liu v. Royale Care, Inc.*, No. CV201700979B, 2018 WL 2306699, at *3 (Mass. Super. Ct. Apr. 2, 2018) (finding abuse of process counterclaim based on petitioning activity alone where "[n]othing in the . . . counterclaim or the pleadings shows that [the plaintiff] is using his complaint to achieve any objective other than to obtain relief to which he entitled"); *Gerard*, 2012 WL 6195208, at *6 ("HLO has not alleged any other conduct apart from mother's petitioning activity, *i.e.*, filing suit and conducting discovery. The firm's allegations instead focus exclusively on the mother's motives in filing suit. . . . [T]hat is insufficient.").

Here, Wiseman and Petit fail to point to "conduct separate and independent from" Kirby's petitioning activity. *Keystone Freight*, 77 Mass. App. Ct. at 314. Obviously, Wiseman and Petit's answer includes allegations about conduct that is wholly separate from the filing of Kirby's present lawsuit, such as alleged sexual assaults between approximately 2013 and 2021. *See generally* Docket No. 31. But those allegations have no direct bearing on Counterclaims 6, 8, and 9; there are no factual allegations in the answer/counterclaims to suggest that Kirby filed suit as part of a larger pattern of extortion. *See id.* at 9–15. Wiseman and Petit's opposition to Kirby's motions to dismiss similarly does not point to extortionate (or otherwise coercive) conduct of the sort that might remove Counterclaims 6, 8, and 9 from the reach of the anti-SLAPP statute. *See generally* Docket No. 49.

To be sure, Petit's affidavit in support of his opposition to Kirby's motions to dismiss is suggestive of extortion, but it is more gesture than substance. Petit contends, for instance, that Kirby is "the type of person that would seek retaliation and would also try to harass [Wiseman] based on the actions he had already taken and comments he had already made." Docket No. 49-2, ¶ 3. Petit does not specify what it is he is referring to when he mentions "the actions [Kirby] had already taken" or the "comments he had already made." *Id.* Still less does Petit spell out any actions or statements by Kirby that might be actionable; he merely characterizes him as "the type of person" who would "seek retaliation" and "harass" Wiseman. *Id.*

Petit also asserts in his affidavit that, on June 30, 2023, approximately one month before Kirby filed suit, Wiseman "told [Kirby] that if [Kirby] did not respect her peace and privacy and tried to harass her, she would take the necessary steps to protect herself," as well as that Petit had warned Kirby that Petit "would not tolerate any attempt to harass" Wiseman.[13] *Id.* ¶¶ 3–4. These averments likewise add nothing that would save Counterclaims 6, 8, and 9 from dismissal. They recount statements made by Petit and Wiseman and refer only elliptically to any conduct by Kirby. Moreover, merely alleging that Kirby brought suit to prevent Wiseman from "tak[ing] the necessary steps to protect herself," speaks only to Kirby's motive in filing his claims, and does not allege "improper action, separate and distinct from the exercise of petitioning activity." *Keystone Freight*, 77 Mass. App. Ct. at 314.

In sum, the factual averments of Counterclaims 6, 8, and 9 amount to no more than Wiseman and Petit's "attribution of a motive," which the Massachusetts Appeals Court has made

---

[13] For present purposes, I set aside possible evidentiary challenges to admitting testimony from Petit about a conversation that supposedly took place between Kirby and Wiseman.

clear is "never sufficient." *Id.* I find, therefore, that Kirby has met his burden of showing that Counterclaims 6, 8, and 9 are based on petitioning activity alone.

ii.      Counterclaim 7

In Counterclaim 7, Wiseman and Petit allege that Kirby violated Mass. Gen. Laws ch. 231, § 6F by bringing claims that are "wholly insubstantial, frivolous and . . . not advanced in good faith." Docket No. 31, at 13–14. Section 6F "provides for attorneys' fees and costs in 'any civil action in which a finding, verdict, decision, award, order or judgment has been made' that determined that 'all or substantially all of the claims, defenses, setoffs or counterclaims[] . . . were wholly insubstantial, frivolous and not advanced in good faith.'" *Rasla v. Wells*, No. 23-cv-12499-DJC, 2024 WL 3952752, at *5 (D. Mass. Aug. 27, 2024) (quoting Mass. Gen. Laws ch. 231, § 6F).

Assuming for present purposes that Counterclaim 7 has been appropriately pled,[14] I turn to the first step of the anti-SLAPP analysis: deciding whether Counterclaim 7 is based on Kirby's filing of the present action alone.

---

[14] "On its face, G.L c. 231, § 6F does not provide any basis for an independent claim that can be pled in a party's complaint[] . . . ." *Kanj v. D'Agostino*, No. 15 MISC 000446, 2017 WL 2406190, at *14 (Mass. Land Ct. May 31, 2017); *cf. Ben v. Schultz*, 47 Mass. App. Ct. 808, 814 (1999) ("[A] § 6F motion is not a distinct cause of action resulting in a judgment that 'finally resolves the rights of the parties' . . . ."). This is because "[t]here is no plausible claim for violation of § 6F until after 'a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact.'" *Carr v. Cesari & McKenna, LLP*, No. SUCV20162087H, 2017 WL 2623126, at *3 (Mass. Super. Ct. Mar. 27, 2017).

It is also doubtful whether § 6F applies in federal court. *See Rasla*, 2024 WL 3952752, at *5 ("Sanctions pursuant to Mass. Gen. L. c. 231 § 6F . . . are 'applicable only to cases brought in state courts and does not permit such awards by federal district courts.'" (quoting *Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F. Supp. 2d 442, 445 (D. Mass. 2005))).

Kirby has not, however, moved to dismiss Counterclaim 7 on the basis that § 6F does not provide for a standalone claim or that it is inapplicable in federal court. Kirby simply alleges that it is subject to dismissal under the anti-SLAPP statute.

Given that § 6F is expressly directed at in-court claims and defenses, it is unsurprising that courts have ruled that "[a] counterclaim alleging violation of § 6F is based on petitioning activities." *Carr v. Cesari & McKenna, LLP*, No. SUCV20162087H, 2017 WL 2623126, at *3 (Mass. Super. Ct. Mar. 27, 2017); *see also Brooks Automation, Inc. v. Blueshift Tech., Inc.*, No. 05-3973, 2006 WL 307948, at *3 (Mass. Super. Ct. Jan. 24, 2006) ("[I]f [the defendant's] counterclaim had been fashioned as . . . a statutory claim that [the plaintiff's] complaint was frivolous and in bad faith under G.L. c. 231, § 6F, the counterclaim would plainly have been based on [the plaintiff's] petitioning activities.").

This case is no different. Counterclaim 7 alleges simply that Kirby's claims are "wholly insubstantial," "frivolous," and "not advanced in good faith." Docket No. 31, at 13–14. Because seeking relief in court is undoubtedly petitioning activity, *see 477 Harrison Ave.*, 483 Mass. at 520 (filing a lawsuit is petitioning activity); *Rosario*, 2023 WL 2777578, at *3 (same), Kirby has met his burden at step one to show that Counterclaim 7 is based on petitioning activity alone.

### iii.     Counterclaims 10 and 11

At first blush, it is a closer question whether Counterclaims 10 and 11 have any "substantial basis in conduct other than or in addition to" Kirby's filing of the present lawsuit. *Bristol Asphalt*, 493 Mass. at 555–556. In Counterclaim 10, Wiseman and Petit allege that Kirby violated Mass. Gen. Laws c. 214, § 1B by "unreasonably, substantially and seriously interfer[ing] with the[ir] privacy." Docket No. 31, at 15. In Counterclaim 11, Wiseman and Petit allege that Kirby "published defamatory statements . . . accusing them of criminal conduct." *Id.* at 15–16. On the face of the pleading, the two counterclaims consist of conclusory assertions, with little in the way of specific factual allegations; they do not address *how* Kirby interfered with their privacy, *what* defamatory statements he made, or *where* those statements were published.

From a failure-to-state-a-claim perspective, the deficiencies in Wiseman and Petit's pleading of Counterclaims 10 and 11 are obvious. There are no factual allegations to flesh out the key elements of either claim, and, as a matter of general practice, a complaint that merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice to state a claim.[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). But Kirby has not moved to dismiss Counterclaims 10 or 11 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which leaves the Court to consider the anti-SLAPP dismissal motion without much information as to what conduct forms the basis for Counterclaims 10 and 11.

Kirby aptly points out that Wiseman and Petit's answer (which contains Counterclaims 10 and 11) makes "no reference to any fact, word, language, or writing by Mr. Kirby other than the Verified Complaint and the accompanying pleadings filed in the Plymouth Superior Court." Docket No. 38, at 6–7. During oral argument, counsel for Wiseman and Petit acknowledged that the only conduct at issue in both Counterclaims 10 and 11 is indeed Kirby's filing of the present

---

[15] "A plaintiff bringing an invasion of privacy claim in Massachusetts under M.G.L. c. 214, § 1B must show that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Church v. United States*, No. CV 24-10470-NMG, 2025 WL 915758, at *7 (D. Mass. Mar. 25, 2025) (citing *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015)).

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004) (footnote omitted).

lawsuit. This is, effectively, a concession that Counterclaims 10 and 11 are based on petitioning activity alone.[16]

> b.    Step Two of the Anti-SLAPP Analysis: Reasonable Factual Support or Arguable Basis in Law

Having found that Kirby has met his burden at step one with respect to Counterclaims 6 through 11, I must consider whether Wiseman and Petit have sufficiently demonstrated that Kirby's petitioning activity "was devoid of any reasonable factual support or any arguable basis in law." *Bristol Asphalt*, 493 Mass. at 557 (quoting Mass. Gen. Laws ch. 231, § 59H). The anti-SLAPP statute dictates that, should Wiseman and Petit fail to meet this burden, Kirby's special motions to dismiss must be granted. *See id.*

Wiseman and Petit acknowledge that they bear the burden of showing that Kirby's claims are "devoid of any reasonable factual support or any arguable basis in law." Docket No. 49, at 4 (quoting *Bristol Asphalt*, 493 Mass. at 557). Yet they make only a token effort to meet this burden. They devote a total of three sentences to the point, arguing—in conclusory fashion—that Kirby's claims are "frivolous" and thus "devoid of any reasonable factual support or any arguable basis in law." *See id.* at 7.

To be sure, earlier in their opposition, Wiseman and Petit point the Court to a series of "facts"—as set forth in their respective affidavits—that they contend "dispel[] Kirby's claims." *Id.* at 5; *see id.* at 4–6. But as the Supreme Judicial Court has made clear, a special motion opponent

---

[16] If more were needed, Wiseman and Petit's affidavits attached to their opposition to Kirby's motion to dismiss reinforce that Counterclaim 10, at least, concerns Kirby's filing of the present lawsuit. *See* Docket No. 49-1, ¶ 11 (Wiseman's affidavit) ("*As a result of the lawsuit Kirby brought against me and my husband*, we have both suffered an invasion of our privacy and emotional distress." (emphasis added)); Docket No. 49-2, ¶ 8 (Petit's affidavit) ("*As a result of the lawsuit Kirby brought against me and my wife*, we have both suffered an invasion of our privacy and emotional distress." (emphasis added)).

"cannot meet its burden merely by presenting affidavits contradicting the factual basis of the special movant's petitioning activities." *477 Harrison Ave.*, 477 Mass. at 173. If such a showing were sufficient, a judge deciding an anti-SLAPP motion to dismiss would be forced to determine "which of the parties' pleadings and affidavits are entitled to be credited or accorded greater weight," before the parties have finished (or in many cases even started) exchanging discovery.[17] *Benoit v. Frederickson*, 454 Mass. 148, 154 n.7 (2009). Accordingly, there is no merit to Wiseman and Petit's suggestion that, because their affidavits present a different version of events than the version Kirby has presented, they have met their burden to show that Kirby's claims are "devoid of any reasonable factual support."[18] *Bristol Asphalt*, 493 Mass. at 557.

Wiseman and Petit's contention that Kirby's claims are "devoid of any reasonable factual support" is not notably enhanced by their accusation that Kirby brought suit to extort or coerce

---

[17] The Massachusetts anti-SLAPP statute contains an automatic stay of discovery provision. *See* Mass. Gen. Laws ch. 231, § 59H ("All discovery proceedings shall be stayed upon the filing of the special motion under this section; provided, however, that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted. The stay of discovery shall remain in effect until notice of entry of the order ruling on the special motion."). But as several courts have noted, it appears to be an open question whether such provisions apply in federal court. *Cf. Cuba v. Pylant*, 814 F.3d 701, 706 n.6 (5th Cir. 2016) (noting that the Fifth Circuit had yet to "resolve an important subsidiary question . . . : whether, under the *Erie* doctrine, the array of state procedural rules surrounding anti-SLAPP motions to dismiss (*viz.* discovery stays, accelerated timetables for decision, and the like) follow the core anti-SLAPP motion to dismiss into federal court"); *Coomer v. Byrne*, No. 24-cv-8, 2024 WL 3597121, at *3 (M.D. Fl. July 31, 2024) (explaining that "federal courts have reached conflicting results in determining whether state anti-SLAPP statutes apply in federal court" but noting that, "[w]ith respect to portions of anti-SLAPP statutes that either permit or mandate a stay of discovery, . . . courts have more consistently found those to be inapplicable in federal court").

[18] At least with respect to Counterclaims 6, 8, and 9, this result is not surprising. As the Massachusetts Appeals Court explained in *Hidalgo v. Watch City Construction Corp.*, abuse of process claims—when asserted as counterclaims—are "quite unlikely" to survive an anti-SLAPP motion to dismiss, as "the claim[s] that [are] alleged to lack reasonable basis ha[ve] not yet been adjudicated." 105 Mass. App. Ct. at 153. "Put differently, claims for . . . abuse of process must ordinarily await the outcome of the lawsuit that they are challenging." *Id.*

them. Case law makes clear that "[t]he test for whether the petitioning activity—the lawsuit—ha[s] a reasonable basis is an objective one; it does not turn on the plaintiff's . . . subjective motivation in filing suit, or whether that motivation is considered in some way improper." *Hidalgo*, 105 Mass. App. Ct. at 152; *see 477 Harrison Ave.*, 477 Mass. at 173 ("[T]he defendants' motivation for engaging in petitioning activity does not factor into whether their petitioning activity is illegitimate. Rather, the relevant inquiry is whether the plaintiff has demonstrated that the defendants' petitioning activity lacks an objectively reasonable basis." (citations and footnote omitted)).

Where, as here, counterclaims are based solely on petitioning activity, such counterclaims may survive an anti-SLAPP motion to dismiss if the petitioning activity is shown to be "devoid of any reasonable factual support." *Bristol Asphalt*, 493 Mass. at 557. However, for petitioning activity that has yet to be adjudicated, this is bound to be a very rare circumstance. *See* Hidalgo, 105 Mass. App. Ct. at 153 (explaining that certain claims, when asserted as counterclaims, are "unlikely . . . to survive an anti-SLAPP motion" because "the claim that is alleged to lack reasonable basis has not yet been adjudicated"). Kirby's claims are not so clearly devoid of arguable basis in law as to save the counterclaims here. Whether the evidence will ultimately support Kirby's claims remains to be seen, but it cannot be said, based on the pleadings themselves, that Kirby's petitioning activity (*i.e.*, his claims against Defendants) is "devoid of any reasonable factual support." Accordingly, I recommend that Judge Kelley grant Kirby's motions to dismiss insofar as they seek dismissal of Counterclaims 6 through 11.

### 2.    *Wiseman and Petit's Motion to Dismiss*

Aiming to turn the tables on Kirby, Wiseman and Petit move to dismiss all seven of Kirby's claims—conspiracy; negligence; gross negligence; infliction of emotional distress; extortion, attempted extortion, and attempted larceny; defamation; and coercion/harassment (*see* Docket No.

59, at 10–17)—under the anti-SLAPP statute.[19] *See* Docket Nos. 50, 51. The factual underpinning of their anti-SLAPP argument is apparently their assertion that, in June 2023, Wiseman "told [Kirby] that 'if he did not respect her peace and privacy and continued to harass her, she would take the necessary steps to protect herself (*e.g.* seek a restraining order).'" Docket No. 51, at 3.

Before diving into this argument, it is useful to clarify an ambiguity in the language of the briefing in question. As written, the parenthetical language, "(*e.g.* seek a restraining order)," might be read to indicate that the conversation included some explicit reference to a "restraining order." But counsel for Wiseman and Petit confirmed at oral argument that there is no such factual allegation here. The parenthetical language is a lawyer's interpolation, positing that Wiseman's reference to "necessary steps to protect herself" could have been intended by Wiseman, or understood by Kirby, to indicate an intention to take steps in a judicial forum, such as seeking a restraining order. There is, in other words, no allegation that Wiseman ever sought a restraining order or otherwise petitioned a court for relief. Nor is there any allegation that Wiseman ever *mentioned* seeking a restraining order or otherwise petitioning a court for relief.

With this clarification in mind, the nub of Wiseman and Petit's argument for dismissal is that Kirby initiated the present suit based on an understanding that Wiseman intended to petition for a restraining order and that, by suing her, he might be able to put a stop to it. *See* Docket No. 51, at 3. This, they argue, makes this case the type of case that the anti-SLAPP statute was meant to prevent. *Id.*

---

[19] At points, Wiseman and Petit's briefing reads more like a motion to dismiss for failure to state a claim than a motion to dismiss under the anti-SLAPP statute. *See, e.g.*, Docket No. 51, at 3 ("Kirby has not pleaded the elements of a conspiracy in his Complaint."). Counsel for Wiseman and Petit confirmed at oral argument, however, that the pending motion is not intended to seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

> a.    Step One of the Anti-SLAPP Analysis: Based on Petitioning Activity Alone

As discussed above, the first step in the analysis is determining whether Wiseman and Petit have shown that the claims they ask the Court to dismiss are based on their petitioning activity alone. They fail to meet this burden.

> i.    *Kirby's Extortion-Related Claims*

Most of Kirby's claims against Defendants—*i.e.*, Counts 1, 2, 3, and 5—are based on allegations that Defendants' committed acts of extortion (or conspired to do so). *See* Docket No. 59, ¶¶ 52–56 (Count 1) (alleging that Defendants conspired to extort Kirby); *id.* ¶¶ 57–62 (Count 2) (alleging that Defendants were negligent in conspiring to extort Kirby); *id.* ¶¶ 63–70 (Count 3) (alleging that Defendants were grossly negligent in conspiring to extort Kirby); *id.* ¶¶ 78–84 (Count 5) (alleging that Defendants extorted Kirby). Kirby alleges that, on June 30, 2023, Wiseman telephoned him and threatened to "destroy him" if he spoke about Defendants and that, ten minutes later, he received a text message from Petit "reiterating the threat issued by" Wiseman. *Id.* ¶¶ 30(g), 32. Kirby also alleges that, approximately one year later, in June 2024, he received a call from Delabruere (who Kirby contends was with Wiseman and Petit at the time). *Id.* ¶ 40. Kirby claims that Delabruere told him that she would "destroy his life and his reputation" if Kirby did not pay her $300,000 by July 1, 2024. *Id.* ¶ 41(a). Kirby also alleges that, a few weeks later, on July 19, 2024, Wiseman sent Kirby an email that, in Kirby's telling, alluded to Delabruere's extortionate demand. *See id.* ¶ 47 (claiming that Wiseman's email "retaliated against . . . Kirby" and "threaten[ed that] they had made clear what would happen to him if he did not comply with their extortionate demand"). *See generally* Docket No. 59-6 (email at issue). According to Kirby, these facts illustrate that Defendants conspired to commit—and did in fact commit—extortion.

On their face, Counts 1, 2, 3, and 5 are plainly based on conduct other than petitioning activity—namely demanding payments and making threats in telephone calls and text messages. It is thus evident that these counts are not based *solely* on petitioning activity.

Wiseman and Petit attempt to sidestep this point by suggesting that the real reason Kirby filed the present suit was to deter Wiseman from petitioning for a restraining order against him. *See* Docket No. 51, at 3. To be sure, seeking a restraining order would constitute petitioning activity under the anti-SLAPP statute. *See* Mass. Gen. Laws ch. 231, § 59H (defining "petitioning activity" to include "any written or oral statement made before or submitted to a . . . judicial body"). But what is missing is—as discussed above—any allegation that any such petitioning activity occurred, or even that such petitioning activity was mentioned. Hence, there is no factual predicate for any assertion that Kirby brought suit for the sole purpose of punishing or deterring petitioning activity. Indeed, even if Kirby subjectively hoped that his lawsuit would persuade Wiseman not to seek a restraining order, such motive would be irrelevant. *See Hidalgo*, 105 Mass. App. Ct. at 151 (explaining that "an improper subjective motive for filing a lawsuit" does not alter the fact that "[t]he operative act complained of is the filing of a lawsuit"). Whatever else may have motivated Kirby to file suit, his claims plainly rest on allegations about extortionate conduct, separate and apart from any petitioning activity that may have been in contemplation.

## ii. *Kirby's Other Tort Claims*

We turn now to Wiseman and Petit's anti-SLAPP attack on Counts 4, 6, and 7 of Kirby's complaint. In Count 4, Kirby alleges that Defendants negligently and intentionally inflicted severe and debilitating emotional distress. *See* Docket No. 59, ¶¶ 71–77. In Count 6, Kirby alleges that Defendants "intentionally uttered and published . . . threats, claims and allegations" that were "false, libelous, and slanderous." *Id.* ¶¶ 85–90. And in Count 7, Kirby alleges that Defendants engaged in a pattern of conduct that "constitute[s] harassment and coercion." *Id.* ¶¶ 91–95.

It is not clear on the face of the complaint exactly what conduct underlies Counts 4, 6, and 7. Based on the complaint's incorporation of prior (factual) paragraphs, it *appears* that these counts rest on essentially the same conduct (threatening phone calls and text messages) that underlies Counts 1, 2, 3, and 5. There is, in any event, no reference in the complaint—nor in Wiseman and Petit's briefing on the motion—to any petitioning activity by Defendants, making it impossible to find—on the present record—that Kirby's claims are based solely on petitioning activity.[20]

Wiseman and Petit fail to meet their burden of showing that Kirby's allegations against them have "no substantial basis in conduct other than or in addition to [their] alleged petitioning activity." *Bristol Asphalt*, 493 Mass. at 555–56. There is, accordingly, no need to engage in step two of the analysis. I recommend that Judge Kelley deny Wiseman and Petit's anti-SLAPP motion to dismiss in its entirety.

**B.      Statute of Limitations—Federal Rule of Civil Procedure 12(b)(6)**

   *1.      Kirby's Motion to Dismiss*

Kirby argues that Counterclaims 1 through 5, brought against him by Wiseman and Petit, are barred by the statute of limitations and should be dismissed.[21] *See* Docket No. 38, at 4–5. Kirby notes that these counterclaims describe the alleged assaults as taking place "[o]n multiple

---

[20] As discussed above, Wiseman makes references to "recant[ing] . . . testimony" in which she accused Kirby of rape. *See, e.g.*, Docket No. 31, at 13. As a legal matter, testimony before a court of law would constitute petitioning activity. *See Wynn v. Delorie*, No. 24-P-52, 2025 WL 15405, at *3 (Mass. App. Ct. Jan. 2, 2025) (explaining that testimony is petitioning activity because it "made before [and] submitted to a . . . judicial body" (alterations in original) (quoting Mass. Gen. Laws ch. 231, § 59H)). But there is no allegation that Wiseman ever testified in court. Indeed, counsel for Wiseman and Petit acknowledged during oral argument that Wiseman has not given any formal testimony.

[21] Counterclaim 1 is a claim for battery (Docket No. 31, at 11), Counterclaim 2 is a claim for assault (*id.*), Counterclaim 3 is a claim for negligent infliction of emotional distress (*id.* at 11–12), Counterclaim 4 is a claim for intentional infliction of emotional distress (*id.* at 12), and Counterclaim 5 is a claim for violation of the Massachusetts Civil Rights Act (*id.* at 12–13).

occasions between 2013 and 2021." *Id.* at 4 (quoting Docket No. 31, at 10). This time frame, Kirby

argues, places the alleged assaults beyond the three-year statute of limitations. *See id.* at 4–5.

Under Mass. Gen. Laws ch. 260, § 2A, tort actions "shall be commenced only within three

years next after the cause of action accrues." Similarly, under Mass. Gen. Laws, c. 260, § 4,

"actions for assault and battery . . . shall be commenced only within three years next after the cause

of action accrues." Although "[t]he statute does not define the term 'accrues[,]' . . . the general

rule for tort actions is that an action accrues when the plaintiff is injured."[22] *Koe v. Mercer*, 450

Mass. 97, 101 (2007). Accordingly, to the extent that Wiseman and Petit's counterclaims are based

on alleged assaults that took place before July 31, 2021 (*i.e.*, three years before this action was

commenced),[23] they are barred by the statute of limitations.[24] I therefore recommend that Judge

Kelley grant Kirby's motion insofar as it seeks dismissal of any counterclaims predicated on

assaults that occurred prior to July 31, 2021.

---

[22] The Supreme Judicial Court "has developed a discovery rule to determine when the statute of limitations begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another." *Koe*, 450 Mass. at 101. Under this rule, "if the action is based on an inherently unknowable wrong, it accrues when the injured party knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 647 (1984). Wiseman and Petit have not suggested—either in their papers or during oral argument—that the discovery rule applies here.

[23] During oral argument, in response to my questioning, counsel for Kirby stated that the operative date for statute of limitations purposes was the date the counterclaims were filed (*i.e.*, October 28, 2024). It appears, however, that, "[f]or limitations purposes, . . . Massachusetts law (which applies in this diversity case) considers a counterclaim to have been filed as of the date of the filing of the complaint." *Freudenberg Bldg. Sys., Inc. v. Architectural Floor Sys., Inc.*, No. 94-10654-GAO, 1995 WL 598827, at *7 n.9 (D. Mass. Oct. 3, 1995) (citing Mass. Gen. Laws ch. 260, § 36).

[24] Wiseman and Petit do not challenge—neither in their papers nor during oral argument—Kirby's contention that any counterclaims predicated on assaults that allegedly took place between 2013 and July 31, 2021, are barred by the statute of limitations. Instead, their sole contention during oral argument was that Wiseman's affidavit—which was filed along with her opposition to Kirby's motion to dismiss—contains an allegation that Kirby attempted to assault Wiseman on March 9, 2022, which falls within the statute of limitations. *See* Docket No. 49-2, ¶ 10.

On the face of the pleading, Wiseman and Petit allege assaults "between 2013 and 2021," which leaves open the possibility—at least as a theoretical matter—that one or more alleged assaults occurred *after* July 31, 2021 (*i.e.*, between July 31, 2021, and December 31, 2024). Thus, it is unclear whether a dismissal of counterclaims based on conduct before July 31, 2021, amounts to a complete dismissal of Counterclaims 1 through 5.[25] Wiseman and Petit will need to specify whether they allege that any assault(s) took place after July 31, 2021.[26]

It bears noting that, at oral argument, Kirby's counsel articulated a fallback argument: to the extent that any of Counterclaims 1 through 5 survive Kirby's motion to dismiss for failure to state a claim, the Court should instead dismiss them under the anti-SLAPP statute. Kirby reasons that, with the time-barred allegations of sexual assault stricken from Wiseman and Petit's answer, the only remaining conduct alleged is petitioning activity (namely, Kirby's pursuit of the present litigation). Here, too, the ambiguity in Wiseman and Petit's pleading makes it impossible to resolve the question at the current posture of the case. If some assault claims are *not* time-barred, then it cannot be said—on the face of the pleadings—that the only surviving factual allegations are based on Kirby's petitioning activity alone.

---

[25] Wiseman's affidavit—filed in conjunction with her opposition to Kirby's motion to dismiss—suggests that a dismissal of counterclaims based on conduct before July 31, 2021, *would* amount to a complete dismissal of Counterclaims 1 through 5. In the affidavit, Wiseman refers to two incidents that took place in 2021: one on January 22, 2021, and another on June 21, 2021. *See* Docket No. 49-1, ¶¶ 8(a), (b). The affidavit does not refer to any assault after July 31, 2021.

[26] To the extent there is a factual basis for doing so, *see* Fed. R. Civ. P. 15(a), Wiseman and Petit may move to amend their pleading to clarify this ambiguity.

### III.    Conclusion

For these reasons:

I **RECOMMEND** that Judge Kelley **DENY** Wiseman and Petit's motion to dismiss (Docket No. 50) in its entirety.

I **RECOMMEND** that Judge Kelley **GRANT** Kirby's motions to dismiss (Docket Nos. 37, 39) insofar as they request dismissal of Counterclaims 6 through 11 under the anti-SLAPP statute,[27] and insofar as they request dismissal of counterclaims predicated on assaults that allegedly occurred prior to July 31, 2021.


/s/ Paul G. Levenson
Paul G. Levenson
Dated: June 24, 2025                                    U.S. MAGISTRATE JUDGE

---

[27] I note that the anti-SLAPP statutes provides that, "[i]f the court grants [a] special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters." Mass. Gen. Laws ch. 231, § 59H. Accordingly, should Judge Kelley adopt this recommendation, Kirby will be entitled to "costs and reasonable attorney's fees . . . incurred for the special motion."

## NOTICE OF OBJECTION PROCEDURE

The parties are advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health & Hum. Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).